**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

---

REGINALD BLOUNT, DESMOND
WHATLEY, DAVID BARTLESON,
And KIRK L. JIMMERSON, JR.

        Plaintiffs,

    v.

FLEET COURIER, INC.; STRYKER
CORPORATION; ABC INSURANCE
COMPANY

        Defendants

Case No.:

Jury Trial Demanded

---

## COMPLAINT

NOW COME Plaintiffs Reginald Blount, Desmond Whatley, David Bartleson, and Kirk L. Jimmerson, Jr., and, by their attorneys, Cade Law Group, LLC, and as for their Complaint against Defendants Fleet Courier, Inc., Stryker Corporation, and ABC Insurance Company (collectively "Defendants", unless otherwise noted) allege and show to the Court as follows:

### INTRODUCTION

1.    This is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f) (1) and (3), as amended by Title I of the Civil Rights Act of 1991 ("Title VII") to correct unlawful employment practices on the basis of race undertaken by Defendants, and to provide appropriate relief to Plaintiffs Reginald Blount, Desmond Whatley, David Bartleson, and Kirk L. Jimmerson, Jr. on this basis.

2.     Title VII, as amended, also bars retaliation against employees who seek to correct unlawful employment practices on the basis of race undertaken by Defendants. This action seeks to provide appropriate relief to Plaintiffs Reginald Blount, Desmond Whatley, David Bartleson, and Kirk L. Jimmerson, Jr. on this basis.

3.     This is also an action for tortious interference with contractual relations against Defendant Stryker Corporation.

4.     As alleged with greater particularity below, Defendants engaged in unlawful employment discrimination against Plaintiffs on the basis of their race, and/or retaliated against them under Title VII.

5.     Additionally, as alleged with greater particularity below, Defendant Stryker Corporation intentionally, improperly, and knowingly participated in and/or made the ultimate decision to terminate each of the Plaintiffs' employment, and in so doing is liable for tortious interference with Plaintiffs' contractual relation with Defendant Fleet Courier.

**JURISDICTION**

6.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e-5(f) (1) and (3); and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

7.     Plaintiffs Reginald Blount, Desmond Whatley, David Bartleson, and Kirk L. Jimmerson, Jr. have complied with all jurisdictional prerequisites and conditions precedent to action under Title VII of the Civil Rights Act of 1964, by timely filing separate charges of discrimination with the EEOC on January 24, 2018. *See* **Exhibits A** to **D**.

2

8.     Plaintiffs Reginald Blount, Desmond Whatley, David Bartleson, and Kirk L. Jimmerson, Jr. received respective notices of right to sue on November 25, 2020. *See* **Exhibits E** to **H**.

9.     This Court has supplemental jurisdiction over any other claims Plaintiffs could make, pursuant to 28 U.S.C. §1367, because they would form part of the same case or controversy as the aforementioned claims.

10.    Venue in this judicial district is proper, by virtue of 28 U.S.C. §1391, as Plaintiffs Reginald Blount, Desmond Whatley, David Bartleson, and Kirk L. Jimmerson, Jr. worked for Defendants in Brookfield, Wisconsin, which is in the Eastern District of Wisconsin, and all claims arose in this District.

## PARTIES

11.    Plaintiff Reginald Blount is an adult male citizen of the State of Wisconsin and residing at 9045 N. 84th Ave., Milwaukee, Wisconsin 53223. Plaintiff Reginald Blount is a former employee of Defendant Fleet Courier, Inc. who worked as a driver from on or about March 14, 2016 to on or about March 29, 2017. Plaintiff Reginald Blount is African American.

12.    Plaintiff Desmond Whatley is an adult male citizen of the State of Wisconsin and residing at 1201 S. 64th St., West Allis, Wisconsin 53214. Plaintiff Desmond Whatley is African American. Plaintiff Desmond Whatley is a former employee of Defendant Fleet Courier, Inc. who worked as a driver from on or about March 14, 2016 to on or about July 14, 2017. Plaintiff Desmond Whatley is African American.

13.    Plaintiff David Bartleson is an adult male citizen of the State of Wisconsin and residing at 429 W. Christine Ln., Milwaukee, Wisconsin 53212. Plaintiff David

3

Bartleson is African American. Plaintiff David Bartleson is a former employee of Defendant Fleet Courier, Inc. who worked as a driver from on or about April 15, 2016 to on or about March 29, 2017. Plaintiff David Bartleson is African American.

14.     Plaintiff Kirk L. Jimmerson, Jr. is an adult male citizen of the State of Wisconsin and residing at 383 Minz Park Cir., Apt. 3, West Bend, Wisconsin 53095. Plaintiff Kirk L. Jimmerson, Jr. is African American. Plaintiff Kirk L. Jimmerson, Jr. is a former employee of Defendant Fleet Courier, Inc. who worked as a driver from on or about February 20, 2016 to on or about March 24, 2017. Plaintiff Kirk L. Jimmerson, Jr. is African American.

15.     Defendant Fleet Courier, Inc. is an Illinois for-profit corporation engaged in the transportation of medical equipment or devices, and is engaged in business and/or has several locals throughout the Upper Midwest region, including one in the State of Wisconsin located at Defendant Stryker Corporation's facilities in 13040 W Lisbon Rd # 700, Brookfield, WI 53005. Upon information and belief, Fleet Courier is not legally authorized to do business in the State of Wisconsin, and has no Registered Agent in the State of Wisconsin. Its address in the State of Illinois is 21201 S. Elsner Rd., #1447, Frankfort, IL 60423, and its Registered Agent in the State of Illinois is William Allen, 2100 Manchester Rd., Suite 1015, Wheaton, IL 60187-4591.

16.     Upon information or belief, Defendant Stryker Corporation is a Michigan for-profit corporation engaged in the manufacture and research of medical equipment, and is engaged in business and/or has several locals throughout the United States, including one in the State of Wisconsin. Upon information and belief, Stryker is legally authorized to do business in the State of Wisconsin, and its Registered Agent in the State of

4

Wisconsin is CT Corporation System, 301 S. Bedford St., Suite 1, Madison, WI 53703. Its address in the State of Wisconsin is 13040 W Lisbon Rd # 700, Brookfield, WI 53005.

17.     Defendant ABC Insurance Company is believed to be, and is believed to have been at all material times, an insurance company that had in place a policy or policies which insured, totally or partially, Defendants Fleet Courier and/or Stryker for any or all liability for their actions against Plaintiff.

**FACTS – DEFENDANTS**

18.     The only services provided by Fleet Courier are – and were, at all times relevant to the facts of this Complaint – the transportation or delivery of medical equipment or devices. The entirety of these services are, and were, carried out by Fleet Courier's drivers.

19.     Fleet Courier only has eight people it considers employees throughout the entire Company, including Dispatchers, Hub Managers, Coordinators, and Agnes Corrado (Operations Manager) and Concetta Frain (Human Resources). The latter two also are the Company's owners, and both are White.

20.     As drivers with Fleet Courier, Plaintiffs' sole duties were supposed to be transporting or delivering medical equipment or devices from one location to another, although the Defendants also required them to assemble medical equipment or devices, without compensating them for it.

21.     Occasionally, Fleet Courier drivers had to put together or assemble the equipment or supplies, including "instrument trays", they delivered if Stryker's employees had not already done so. This assembly was done by following the instructions and

5

photographs that accompanied the equipment or supplies. Fleet Courier did not pay drivers for the time spent assembling equipment or supplies, or for the assembly itself.

22. Fleet Courier's Hub Managers assign delivery "runs" to the drivers. Fleet Courier's drivers are paid on the basis of the delivery "runs" they perform. Delivery "runs" are priced differently. Some "runs" pay better than others. A driver who is assigned better-paying "runs" will earn more than one who is not. There is no policy ensuring that non-discriminatory criteria are used in the assigning of "runs" by Hub Managers, and Fleet Courier does not audit the assigning of "runs" to ensure that non-discriminatory criteria are employed, and/or that all drivers are treated and compensated fairly.

23. Though Fleet Courier calls its drivers "independent contractors", it treated them – as a matter of fact – as employees.

24. Upon being hired, a driver would provide Fleet Courier his or her availability, so Fleet Courier could prepare a work schedule. Once a schedule was selected for a driver by Fleet Courier, that driver had to adhere to that schedule on a weekly basis, and could not show up whenever he or she wanted to. Fleet Courier's drivers also had to obtain prior approval from the Hub Manager to show up late, leave early, or miss work. Fleet Courier also could require its drivers to be on-call on, even on holidays. Drivers were not free to leave the Wisconsin "hub" when there was no work to be done. In fact, Fleet Courier's policies stated that drivers spent about 20% of their time waiting at the "hub", for "runs" to be assigned.

25. Delivery "runs" were timed, due to the medical nature of the equipment or devices being transported or delivered and the fact that the equipment or devices were to be used for surgeries.

6

26.     Fleet Courier drivers could not choose when to make a delivery, or how long to get to their destination. Fleet Courier tracked its drivers' movements through a phone application that they required their drivers to install and have active at all times. Upon delivery, Fleet Courier drivers were required to take pictures of the equipment and supplies they delivered, get a signed "Proof of Delivery" receipt, "close out" the delivery run on their phone application, and call the Hub Manager or Dispatcher for any potential further assignments.

27.     Fleet Courier's drivers were not free to work for another delivery company, much less a competitor.

28.     Fleet Courier drivers were issued badges and shirts that read "Fleet Courier," and copies of Fleet Courier's policies. Fleet Courier drivers were required to wear their badges and shirts both at Fleet Courier's "hub" at one of Stryker's facilities and when entering areas of hospitals not open to the public. Fleet Courier's policies provided that failure to adhere to them would result in corrective action.

29.     Plaintiffs' charges of discrimination with the EEOC were cross-filed with the Wisconsin Equal Rights Division, which took up the investigation and processing of the case. One of Fleet Courier's defenses in that case was that it was not a covered entity under the Wisconsin Fair Employment Act (WFEA), because Plaintiffs were independent contractors, and not employees.

30.     On January 17, 2020, after both parties had briefed and been heard on the issue of whether Fleet Courier's drivers were actually employees who had been misclassified as independent contractors, the Wisconsin Equal Rights Division found that, "as a whole, the evidence presented at hearing evinces that the complainants were

employees, and not independent contractors", and that "Fleet Courier had significant control over the means and manner of the complainants' work performance, and engaged in no other business beyond medical courier services." *See* **Exhibit I.**

31. Fleet Courier, Inc. and Stryker Corporation were the Plaintiffs' joint employers and/or are jointly liable for the claims asserted in this Complaint.

32. Fleet Courier's only client in Wisconsin is – and was, at all times relevant to the facts of this Complaint – Stryker Corporation. Fleet Courier's Wisconsin-based operations, or "hub" are, and were, physically located at Stryker Corporation's facilities. Fleet Courier conducts and conducted no other business beyond the transportation or delivery of medical equipment or devices for Stryker from its Wisconsin "hub".

33. Stryker had ultimate say on whether a Fleet Courier driver could and could not perform the delivery of its medical supplies or devices. If Stryker decided that it did not want a particular Fleet Courier driver to transport or deliver its medical supplies or devices, Fleet Courier would have no choice but to terminate that driver, as it had no other clients for whom that driver could perform deliveries.

34. Fleet Courier and Stryker held a mandatory meeting for all drivers on March 16, 2017, in which they instructed drivers about how Fleet Courier and Stryker wanted their delivery runs conducted, and about how to use their tracking phone application. Subsequently, Fleet Courier and Stryker held other "gatherings", whenever any issues arose.

35. At least one of Fleet Courier's Hub Managers directly did work for Stryker after his daily shift with Fleet Courier ended. Neither of the Defendants compensated Hub Managers for work they did for Stryker after their shift with Fleet Courier ended.

36.     At least one of Fleet Courier's Hub Managers was directly hired by Stryker after his employment with Fleet Courier ended.

37.     Tom Wagner, who is White, was the Hub Manager at Fleet Courier's Wisconsin "hub" until March of 2017, when he left his employment with Fleet Courier to work for Stryker.

38.     After Tom Wagner left to go work for Stryker, Ángel Meza was hired as the Hub Manager at Fleet Courier's Wisconsin "hub". Ángel Meza is Hispanic.

39.     Fleet Courier does not have in place an Equal Employment Opportunity policy. It also does not have in place a policy which covers how internal complaints of discrimination are to be made by drivers or other employees or investigated by the Company. Hub Managers are not provided any training on how to address workplace concerns raised by drivers.

40.     Fleet Courier has never hired or promoted an African American individual to a management position, including Hub Manager.

## FACTS – PLAINTIFF KIRK L. JIMMERSON, JR.

41.     Plaintiff Kirk L. Jimmerson, Jr. was hired on or about February 20, 2016 by Fleet Courier as a driver. His direct supervisors were Tom Wagner and, after March of 2017, Ángel Meza, the Hub Managers at Fleet Courier's Wisconsin "hub".

42.     Throughout his employment with Defendants, Plaintiff Kirk L. Jimmerson, Jr. performed his work duties in accordance with Defendants' reasonable expectations of performance, quality, and conduct. He was never been the recipient of any corrective action.

43.     Throughout Plaintiff Kirk L. Jimmerson, Jr.'s employment with Defendants, he was assigned delivery "runs" that paid less than the delivery "runs" assigned to drivers who were not African American. As a consequence of this, Plaintiff Kirk L. Jimmerson, Jr. was never one of Defendant's best-paid drivers. The best-paid drivers every month were ordinarily White or Hispanic.

44.     Throughout Plaintiff Kirk L. Jimmerson, Jr.'s employment with Defendants, he voiced his concern that he was being assigned delivery "runs" that paid less than the delivery "runs" assigned to drivers who were not African American. Defendants ignored these concerns.

45.     On March 24, 2017, Defendants terminated Plaintiff Kirk L. Jimmerson, Jr. for "inability to perform contract duties" after his vehicle broke down. Defendants never gave Plaintiff Kirk L. Jimmerson, Jr. the opportunity to fix his vehicle and come back, even though they had allowed at least one non-African American driver the opportunity to work with an unsuitable vehicle and/or fix his or her vehicle and come back to work. The stated reason for Plaintiff Kirk L. Jimmerson, Jr.'s termination is thus pretextual.

46.     Plaintiff Kirk L. Jimmerson, Jr. was assigned delivery "runs" that paid less because of his race, and was subsequently terminated in retaliation for voicing his concerns about this discriminatory treatment.

### FACTS – PLAINTIFF DAVID BARTLESON

47.     Plaintiff David Bartleson was hired on or about April 15, 2016 by Fleet Courier as a driver. His direct supervisors were Tom Wagner and, after March of 2017, Ángel Meza, the Hub Managers at Fleet Courier's Wisconsin "hub".

48.     Throughout his employment with Defendants, Plaintiff David Bartleson performed his work duties in accordance with Defendants' reasonable expectations of performance, quality, and conduct. He was never been the recipient of any corrective action.

49.     Throughout Plaintiff David Bartleson's employment with Defendants, he was assigned delivery "runs" that paid less than the delivery "runs" assigned to drivers who were not African American. As a consequence of this, Plaintiff David Bartleson was never one of Defendant's best-paid drivers. The best-paid drivers every month were ordinarily White or Hispanic.

50.     Throughout Plaintiff David Bartleson's employment with Defendants, he voiced his concern that he was being assigned delivery "runs" that paid less than the delivery "runs" assigned to drivers who were not African American. Defendants ignored these concerns.

51.     On March 29, 2017, Defendants terminated Plaintiff David Bartleson for not having valid driver's insurance, even though Plaintiff David Bartleson showed a digital copy of his proof of insurance. Defendants did not have a policy that limited valid forms of proof of insurance to paper copies. Moreover, almost immediately after terminating Plaintiff David Bartleson, he was offered reinstatement if he agreed to go on a delivery "run" immediately. The stated reason for Plaintiff David Bartleson's termination is thus pretextual.

52.     Plaintiff David Bartleson was assigned delivery "runs" that paid less because of his race, and was subsequently terminated in retaliation for voicing his concerns about this discriminatory treatment.

## FACTS – PLAINTIFF REGINALD BLOUNT

53.    Plaintiff Reginald Blount was hired on or about March 14, 2016 by Fleet Courier as a driver. His direct supervisors were Tom Wagner and, after March of 2017, Ángel Meza, the Hub Managers at Fleet Courier's Wisconsin "hub".

54.    Throughout his employment with Defendants, Plaintiff Reginald Blount performed his work duties in accordance with Defendants' reasonable expectations of performance, quality, and conduct. He was never been the recipient of any corrective action.

55.    Throughout Plaintiff Reginald Blount's employment with Defendants, he was assigned delivery "runs" that paid less than the delivery "runs" assigned to drivers who were not African American. As a consequence of this, Plaintiff Reginald Blount was never one of Defendant's best-paid drivers. The best-paid drivers every month were ordinarily White or Hispanic.

56.    Throughout Plaintiff Reginald Blount's employment with Defendants, he voiced his concern that he was being assigned delivery "runs" that paid less than the delivery "runs" assigned to drivers who were not African American. Defendants ignored these concerns.

57.    Throughout Plaintiff Reginald Blount's employment with Defendants, there was no written policy that prohibited Fleet Courier drivers from being accompanied by a third party on his delivery "runs", nor conditioning the driver being accompanied by a third party to that person being previously "vetted" and/or approved by Defendants. Several non-African American Fleet Courier Drivers went on delivery "runs" accompanied by

individuals who did not work for Defendants without being disciplined, let alone terminated, for doing so.

58.     Throughout Plaintiff Reginald Blount's employment with Defendants, he rode with his wife during delivery "runs". His Hub Manager was aware that Plaintiff Reginald Blount was riding with his wife, and he and other drivers at the "hub" personally knew Plaintiff Reginald Blount's wife.

59.     Plaintiff Reginald Blount recommended his brother, Plaintiff David Bartleson, for employment with Fleet Courier, and specifically mentioned to Fleet Courier that Plaintiff David Bartleson had accompanied him on delivery "runs", even though Plaintiff David Bartleson was not a driver at that time. Fleet Courier hired Plaintiff David Bartleson as a driver, knowing that he had accompanied Plaintiff Reginald Blount on delivery "runs", and did not discipline Plaintiff Reginald Blount for riding with a third party.

60.     On March 29, 2017 after Defendants had terminated Plaintiff David Bartleson, Plaintiff Reginald Blount told Hub Manager Ángel Meza that he believed that Defendants were unlawfully terminating African American drivers on the basis of their race.

61.     Hub Manager Ángel Meza consistently assigned African American drivers delivery "runs" that paid less than the delivery "runs" assigned to drivers who were not African American, and tended to favor Hispanic drivers. On at least one occasion, Hub Manager Ángel Meza asked darker-skinned drivers if they were Hispanic, very likely to know whether to assign them a better-paying "run" or not.

62.     Defendants did not investigate Plaintiff Reginald Blount's concerns, and instead terminated him shortly thereafter, on May 22, 2017.

63.     The stated reason for Plaintiff Reginald Blount's termination was that he had been accompanied by a third party during a delivery "run". This stated reason is pretextual, because Defendants allowed drivers to ride with third parties, and knew that Plaintiff Reginald Blount had done so before.

64.     Plaintiff Reginald Blount was assigned delivery "runs" that paid less because of his race, and was subsequently terminated in retaliation for voicing his concerns about this discriminatory treatment and about his belief that Defendants were terminating their African American drivers.

**FACTS – PLAINTIFF DESMOND WHATLEY**

65.     Plaintiff Desmond Whatley was hired on or about March 14, 2016 by Fleet Courier as a driver. His direct supervisors were Tom Wagner and, after March of 2017, Ángel Meza, the Hub Managers at Fleet Courier's Wisconsin "hub".

66.     Throughout his employment with Defendants, Plaintiff Desmond Whatley performed his work duties in accordance with Defendants' reasonable expectations of performance, quality, and conduct. He was never been the recipient of any corrective action.

67.     Throughout Plaintiff Desmond Whatley's employment with Defendants, he was assigned delivery "runs" that paid less than the delivery "runs" assigned to drivers who were not African American. As a consequence of this, Plaintiff Desmond Whatley was never one of Defendant's best-paid drivers. The best-paid drivers every month were ordinarily White or Hispanic.

68.     Throughout Plaintiff Desmond Whatley's employment with Defendants, he voiced his concern that he was being assigned delivery "runs" that paid less than the

delivery "runs" assigned to drivers who were not African American. Defendants ignored these concerns.

69.     Throughout Plaintiff Desmond Whatley's employment with Defendants, there was no written policy that prohibited Fleet Courier drivers from being accompanied by a third party on his delivery "runs", nor conditioning the driver being accompanied by a third party to that person being previously "vetted" and/or approved by Defendants. Several non-African American Fleet Courier Drivers went on delivery "runs" accompanied by individuals who did not work for Defendants without being disciplined, let alone terminated, for doing so.

70.     Throughout Plaintiff Desmond Whatley's employment with Defendants, he rode with his fiancée during delivery "runs". His Hub Manager was aware that Plaintiff Desmond Whatley was riding with his fiancée, and he and other drivers at the "hub" personally knew Plaintiff Desmond Whatley's fiancée.

71.     In spite of the above, on July 14, 2017, Plaintiff Desmond Whatley was terminated, at Stryker's request, for having his fiancée accompany him on a delivery "run". This stated reason is pretextual, because Defendants allowed drivers to ride with third parties, and knew that Plaintiff Desmond Whatley had done so before.

72.     After he was terminated by Defendants, Plaintiff Desmond Whatley asked for an opportunity to defend himself, and sent an email to Human Resources Manager and Company Owner Concetta Frain on October 27, 2017 explaining that Fleet Courier had always allowed drivers to ride with third parties, and that Fleet Courier was aware that he himself had previously been accompanied on "runs" by his fiancée. Defendants ignored Plaintiff Desmond Whatley's efforts to defend himself.

73.     Plaintiff Desmond Whatley was assigned delivery "runs" that paid less because of his race, and was subsequently terminated in retaliation for voicing his concerns about this discriminatory treatment.

## COUNT I – RACE DISCRIMINATION

74.     Plaintiffs Reginald Blount, Desmond Whatley, David Bartleson, and Kirk L. Jimmerson, Jr. reallege and incorporate by reference the above paragraphs as if they were fully set forth herein.

75.     Defendants Fleet Courier, Inc. and Stryker Corporation unlawfully discriminated against Plaintiffs Reginald Blount, Desmond Whatley, David Bartleson, and Kirk L. Jimmerson, Jr. on the basis of their race when they made decisions about Plaintiffs' employment, including assigning delivery "runs" and the decision to terminate them. This unlawful discrimination was in violation of Plaintiffs' rights under Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e et seq.), as amended; and 42 U.S.C. §1981.

76.     Defendants treated Plaintiffs Reginald Blount, Desmond Whatley, David Bartleson, and Kirk L. Jimmerson, Jr. worse than they treated those of their peers who are not African American in the terms and conditions of their employment, including assigning lower-paying delivery "runs" and eventually terminating their employment.

77.     Defendants fostered and tolerated a hostile work environment. They did not have any workplace policies barring unlawful discrimination nor setting forth how to bring forward and investigate internal complaints of discrimination. They did not take Plaintiffs' concerns about unlawful discrimination seriously, and chose not to investigate them. Defendants did not even audit or study Fleet Courier's drivers' assigned "runs" to ensure African American drivers were not assigned lower-paying "runs".

16

78.     Any rationale that Defendants could assert for their actions and omissions in relation to Plaintiffs Reginald Blount, Desmond Whatley, David Bartleson, and Kirk L. Jimmerson, Jr. are pretexts cloaking a discriminatory *animus*. There is simply no reason why Plaintiffs were consistently assigned lower-paying delivery "runs" and ultimately terminated for policies that were not applied consistently, while other non-African American employees were assigned better-paying "runs".

79.     As a direct and proximate cause of Defendants' actions in discriminating against them on the basis of their race, Plaintiffs Reginald Blount, Desmond Whatley, David Bartleson, and Kirk L. Jimmerson, Jr. have suffered compensatory damages, including, but not limited to, emotional distress and physical harm, mental anguish, loss of reputation, loss of past wages, loss of future wages, loss of benefits, attorneys' fees, costs, and other expenses as allowed by law.

## COUNT II – RETALIATION

80.     Plaintiffs Reginald Blount, Desmond Whatley, David Bartleson, and Kirk L. Jimmerson, Jr. reallege and incorporate by reference the above paragraphs as if they were fully set forth herein.

81.     Defendants unlawfully retaliated against Plaintiffs Reginald Blount, Desmond Whatley, David Bartleson, and Kirk L. Jimmerson, Jr. for complaining about Defendants' unlawful discrimination against them on the basis of their race when they failed to investigate these complaints and instead made decisions about Plaintiffs' employment, including assigning lower-paying delivery "runs" and eventually terminating their employment. This unlawful retaliation was in violation of Plaintiffs' rights under Title

VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e et seq.), as amended; and 42 U.S.C. §1981.

82.     Any rationale that Defendants could assert for their actions and omissions in relation to Plaintiffs Reginald Blount, Desmond Whatley, David Bartleson, and Kirk L. Jimmerson, Jr. are pretexts cloaking a retaliatory *animus*.

83.     As a direct and proximate cause of Defendants' actions in retaliating against them, Plaintiffs Reginald Blount, Desmond Whatley, David Bartleson, and Kirk L. Jimmerson, Jr. have suffered compensatory damages, including, but not limited to, emotional distress and physical harm, mental anguish, loss of reputation, loss of past wages, loss of future wages, loss of benefits, attorneys' fees, costs, and other expenses as allowed by law.

## COUNT III – PUNITIVE DAMAGES

84.     Plaintiffs Reginald Blount, Desmond Whatley, David Bartleson, and Kirk L. Jimmerson, Jr. reallege and incorporate by reference the above paragraphs as if they were fully set forth herein.

85.     Defendants had been put on notice that Plaintiffs Reginald Blount, Desmond Whatley, David Bartleson, and Kirk L. Jimmerson, Jr. believe that they unlawfully discriminated and retaliated against them. Plaintiffs had also sought to resolve this matter without having to file suit in court, but Defendants have ignored these efforts and left Plaintiffs no choice but to file suit.

86.     Defendants' reckless indifference as to Plaintiffs' rights, including their pattern of intentional discrimination and retaliation against them, entitles them to punitive damages.

**COUNT IV – TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS**

87.     Plaintiffs Reginald Blount, Desmond Whatley, David Bartleson, and Kirk L. Jimmerson, Jr. reallege and incorporate by reference the above paragraphs as if they were fully set forth herein.

88.     As previously alleged, Defendant Stryker Corporation was Plaintiffs' joint employer, and is thus jointly liable to Plaintiffs for the claims asserted in Counts I to III. However, to the extent that the Court were to determine that Defendant Stryker Corporation was not Plaintiffs' joint employer, Defendant Stryker Corporation would still be liable to Plaintiffs for its tortious interference with contractual relations.

89.     Defendant Stryker Corporation participated in and/or made the ultimate decision to terminate each of the Plaintiffs' employment, even though Defendant Stryker Corporation knew that Plaintiffs had a contractual relation in place with Fleet Courier at that time. Defendant Stryker Corporation's actions were intentional, improper, and led to a breach of Plaintiffs' contract with Fleet Courier.

90.     As a result of Defendant Stryker Corporation's tortious interference with Plaintiffs' contractual relation with Fleet Courier, Plaintiffs have suffered damages in the form of loss of income and other benefits, attorney's fees and costs, and other damages, including punitive damages, that they will establish at trial.

**RELIEF**

WHEREFORE, Plaintiffs Reginald Blount, Desmond Whatley, David Bartleson, and Kirk L. Jimmerson, Jr. reallege and incorporates by reference the above paragraphs as if they were fully set forth herein respectfully request that this Court:

a.     Enter a judgment that Defendants violated Title VII of the Civil Rights Act of

1964, as amended;

b.      Enter judgment against Defendants and in favor of Plaintiffs Reginald Blount, Desmond Whatley, David Bartleson, and Kirk L. Jimmerson, Jr. for compensatory damages;

c.      Enter judgment against Defendants and in favor of Plaintiffs Reginald Blount, Desmond Whatley, David Bartleson, and Kirk L. Jimmerson, Jr. for monetary relief;

d.      Enter judgment against Defendants and in favor of Plaintiffs Reginald Blount, Desmond Whatley, David Bartleson, and Kirk L. Jimmerson, Jr. for punitive damages;

e.      Order Defendants to reinstate Plaintiffs Reginald Blount, Desmond Whatley, David Bartleson, and Kirk L. Jimmerson, Jr.;

f.      Award Plaintiffs Reginald Blount, Desmond Whatley, David Bartleson, and Kirk L. Jimmerson, Jr. the costs of this action and reasonable attorney's fees; and

g.      Grant Plaintiffs Reginald Blount, Desmond Whatley, David Bartleson, and Kirk L. Jimmerson, Jr. such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs Reginald Blount, Desmond Whatley, David Bartleson, and Kirk L. Jimmerson, Jr. demand trial by a jury of their peers on all issues of fact.

Dated this 4th day of December, 2020.

**CADE LAW GROUP LLC**

By: *s/ Carlos R. Pastrana*

Carlos R. Pastrana
Nathaniel Cade, Jr.
P.O. Box 170887
Milwaukee, WI  53217

(414) 255-3802 (phone)
carlos@cade-law.com
Attorneys for Plaintiffs Reginald Blount,
Desmond Whatley, David Bartleson,
and Kirk L. Jimmerson, Jr.